IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL DAVID LORD**,<br><br>        Plaintiff,<br><br>    v.<br><br>**NANCY A. BERRYHILL**,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 6:17-cv-00255-SI<br><br>**OPINION AND ORDER** |

Merrill Schneider, SCHNEIDER, KERR, & ROBICHAUX, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Michael David Lord seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Plaintiff's application for

Supplemental Security Income ("SSI") pursuant to the Social Security Act. Because the

Commissioner's decision is based on the proper legal standards and the findings are supported by substantial evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in April 1978. AR 201. He was 32 years old as of the alleged disability onset date. During childhood, he was victim to significant physical abuse by his stepfather. AR 440. Plaintiff now lives with his fiancé, stepdaughter, and infant child. AR 34. He works part-time at the Kozy Kitchen as a dishwasher and occasionally for Guardian Security as a security guard. AR 35, 37-38.

Plaintiff protectively filed his application for SSI that is the subject of this case on May 30, 2013, alleging disability beginning on December 1, 2010. AR 200. Plaintiff alleges that because of the abuse he underwent as a child, he suffers from Post-traumatic Stress Disorder ("PTSD"), an anxiety disorder, and severe depression. He also alleges several severe physical limitations stemming from injuries throughout his past. Plaintiff contends that the mental and physical symptoms render him disabled within the meaning of the Social Security Act. The Commissioner denied Plaintiff's application initially on September 26, 2013, and on reconsideration on February 21, 2014. AR 113, 120.

On April 24, 2014, Plaintiff requested a hearing to review the denial of SSI. AR 131. A hearing was held before Administrative Law Judge ("ALJ") Alex S. Karlin on November 13, 2015. AR 27. On November 30, 2015, the ALJ issued an opinion finding Plaintiff not disabled. AR 11, 22. On December 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff seeks review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

PAGE 3 – OPINION AND ORDER

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

> 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

Applying the sequential analysis, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity after the date of his application for SSI. AR 13. At step two, the

ALJ determined that Plaintiff has the following severe impairments: an anxiety disorder; PTSD; and a right shoulder type 1 labral tear and distal clavicle osteolysis. *Id*. At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets one of the listed impairments. *Id*.

The ALJ next assessed Plaintiff's RFC, finding that Plaintiff has the residual functional capacity to perform less than a full range of medium work as defined in 20 CFR 416.967(c). AR 14. Specifically, the ALJ found that Plaintiff

> can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. The claimant can frequently reach overhead with the right upper extremity. He can frequently climb ramps and stairs but is precluded from climbing ladders, ropes and scaffolds. The claimant may occasionally stoop, kneel, crouch and crawl. The claimant is precluded from working at unprotected heights or with moving mechanical parts. The claimant is limited to performing simple, routine tasks and simple work related decisions. He may occasionally respond appropriately to supervisors but is limited to only occasional interaction with supervisors, coworkers and the general public. The claimant is limited tolerating few changes in the work setting and can perform where duties and procedures are routine and do not change except rarely, up to 10 percent of the time.

AR 14-15.

At step four, the ALJ determined that Plaintiff could not perform any of his past relevant work. *Id*. The ALJ found at step five, however, based on the testimony of a vocational expert ("VE"), that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 20. Thus, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act." AR 21.

**DISCUSSION**

Plaintiff argues that the ALJ erred by improperly: (A) rejecting severe impairments at step two; (B) finding Plaintiff's symptom severity testimony not fully credible; (C) evaluating lay witness testimony; (D) rejecting the opinions of Plaintiff's examining physician, Pamela Roman, Ph.D.; (E) finding that Plaintiff's impairments do not meet or equal a listing at step three; and (F) failing to conduct an adequate analysis at step five. The Court addresses each assignment of error in turn.

**A. Consideration of Severe Impairments in Step Two**

Plaintiff contends that the ALJ committed reversible error by failing to consider all of Plaintiff's impairments at step two of the review process. At step two, an ALJ considers whether a claimant has a medically determinable impairment and whether that impairment is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The purpose of step two is to "dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

When an ALJ errs by neglecting to list a severe impairment at step two, however, the error is harmless as long as the ALJ considers *all* of a claimant's functional limitations at steps four and five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Such is the case here. To the extent the ALJ failed to include some of Plaintiff's severe impairments, the error was harmless because all of Plaintiff's alleged impairments adequately were considered in steps four and five. Additionally, symptoms flowing from impairments identified by the ALJ as severe at step two do not qualify as independent impairments. Finally, Plaintiff does not identify any limitations flowing from the allegedly overlooked impairments that are in addition to the limitations caused by the impairments identified by the ALJ as severe at step two. Plaintiff offers only conclusory arguments that he has additional severe impairments that cause limitations. Accordingly, the Court finds any error at step two to be harmless.

## B. Assessment of Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective statements regarding the severity of his symptoms. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff alleges that he has the following severe physical impairments: right shoulder type 1 labral tear and distal clavicle osteolysis; history of right knee surgery and osteoarthritis of the right knee resulting in chronic pain; degenerative spurring of the left AC joint causing left shoulder and arm pain with radiating numbness, tingling, and shooting pain; chronic headaches; chest pain; back pain; and neck pain. Plaintiff reported that because of these impairments he is restricted in lifting, squatting, standing, reaching, walking, kneeling, and climbing stairs. Additionally, he alleged the following severe mental impairments: an anxiety disorder; PTSD; insomnia and difficulty sleeping; and depression. These impairments allegedly affect his ability to engage in hearing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying the first step in the credibility analysis. AR 16. The ALJ then discredited much of Plaintiff's testimony about the alleged severity of his symptoms. AR 15-19. The ALJ cited two specific reasons, namely, that Plaintiff's activities of daily living and type and frequency of medical treatment do not support his claims as to the alleged severity of his symptoms. *Id*. The Court finds that these reasons are sufficiently specific and that there is sufficient evidence in the record that the ALJ properly relied on them as clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his physical and mental limitations.

### 1. Daily Living Activities

The ALJ found that Plaintiff's daily activities, specifically his work activity, contradicted Plaintiff's claimed limitations. Daily activities can form the basis of an adverse credibility finding when the claimant's activities either contradict claimed limitations or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Orn*

PAGE 9 – OPINION AND ORDER

*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For a credibility analysis, a claimant's daily activities do not need to be equivalent to full-time work; it is sufficient that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina,* 674 F.3d at 1113; *see also Denton v. Astrue*, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [plaintiff's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

      Both of Plaintiff's work activities tend to contradict his contention that his physical and mental impairments render him disabled. After his alleged onset date, Plaintiff worked as a dishwasher at the Kozy Kitchen and as a security guard. AR 36-37. At the Kozy Kitchen, he worked four-to-five days per week washing dishes. *Id*. As a security guard, he monitored event attendees consuming alcohol and reported signs of over-intoxication to a superior officer. AR 38. During his work as a security guard, in addition to being around large crowds, he was regularly on his feet. AR 39-40.

As the ALJ noted, Plaintiff's work as a security guard is at least some evidence that he is able to manage being in or around large crowds if he does not have to interact with people frequently. AR 15. Plaintiff's job as a dishwasher and testimony that he regularly assists in bussing tables further supports the inference that his anxiety is not as severe as alleged, nor is the back pain, neck pain, chest pain, or numbness in his arm so severe that he cannot carry dishes, move bus tubs, or wash dishes. AR 51-55. Plaintiff also spends a substantial amount of time on his feet engaged in activities that contradict his claims about debilitating pain from walking. *Id*. Although not rising to the level of substantial gainful activity, Plaintiff's activities contradict his claimed limitations. Thus, the ALJ articulated a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective testimony.

   **2. Medical Treatment**

Plaintiff challenges the ALJ's findings that Plaintiff did not receive the type and frequency of medical treatment expected of someone with his alleged disabilities. The ALJ may rely on unexplained, or inadequately explained, failure to seek treatment, or failure to follow a prescribed course of treatment, in determining whether a claimant is fully credible. *Molina*, 674 F.3d at 1113.

With regard to Plaintiff's physical symptoms, the medical record shows he consistently sought treatment only for his shoulders. AR 384, 385-86, 391-92, 399. Even for these, however, Plaintiff did not start physical therapy until October 2015. AR 58. Further, although Plaintiff mentioned his knee and back pain during medical appointments on several occasions, he was encouraged each time to make follow-up appointments to address these issues, but there is no evidence that he did so. AR 386, 389-90, 396-400, 402-03, 451. This is in contrast to his pulled muscle, for which he went to the ER right away. AR 52-53.

At the time of the hearing, Plaintiff also had not seen a mental health counselor for two years. AR 56. He frequently missed mental health appointments. AR 393, 409. Plaintiff reports that he went to the emergency room on several occasions for headaches, anxiety, and related symptoms, but the records show that he received minimal treatment, was never admitted, and was only mildly medicated. AR 288-337, 339, 451, 455, 459, 465, 470, 475. The Court recognizes, however, that failure to seek or follow a prescribed course of mental health treatment is disfavored as a reason to discredit mental health complaints. *See Regennitter v. Comm'r of Soc. Sec. Admin*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) ("Indeed, we have particularly criticized the use of a lack of treatment to reject mental health complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996))). Thus, the Court does not find Plaintiff's lack of medical treatment to be a clear and convincing reason to discount his testimony regarding his mental health limitations. But it is a clear and convincing reason to discount his testimony regarding his physical limitations.

## C. Evaluation of Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.*

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115. This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the

PAGE 12 – OPINION AND ORDER

testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's manager, Luke Grover, of the Kozy Kitchen, submitted a letter on behalf of Plaintiff. The letter states that the Kozy Kitchen hired Plaintiff "with full awareness of his PTSD issues" and "made accommodations for [Plaintiff] to leave work when he has experienced an episode." AR 254.

The Court does not find that the ALJ needed to reject any of the evidence in the letter by Mr. Grover for the ALJ to reach any of his conclusions and therefore did not err. In referring to the letter, the ALJ observes, "[Mr. Grover] stated that the claimant had PTSD issues that were accommodated for in his hiring and shift assignment. For instance, he can leave work when he experiences episodes of PTSD." AR 16. This statement connotes a rational interpretation that the letter offered minimal probative value, namely, that: (1) Plaintiff told Mr. Grover he had PTSD and would need accommodations; and (2) Mr. Grover accommodated Plaintiff by allowing him to leave work for reasons Plaintiff attributed to his PTSD. The letter does not address the number of times Plaintiff left work or for how long, does not confirm or deny any of Plaintiff's alleged symptoms (such as his inability to interact with coworkers, supervisors, or the public), and does not address Plaintiff's contention that he needed frequent breaks. The letter does not provide any

specifics regarding any limitations claimed by Plaintiff. The ALJ thus did not "disregard" the letter and therefore did not err in the manner Plaintiff alleges.

**D. Limitations Identified by Dr. Pamela Roman**

Plaintiff contends that the ALJ erred by giving only "partial weight" to the opinion of Dr. Roman in (1) formulating the RFC and (2) in determining whether Plaintiff's impairments met or equaled a listing under 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. Although the ALJ's opinion states, "[p]artial weight given to Pamela Ro[m]an Ph.D.," the Court finds that the ALJ actually gave weight to all of Dr. Roman's findings in both formulating the RFC and assessing whether Plaintiff met or equaled a listing.[1]

**1. The RFC Accurately Incorporates the Findings of Dr. Roman**

Plaintiff argues that the RFC does not incorporate all of the limitations found by Dr. Roman. Specifically, Plaintiff asserts that it omits Dr. Roman's finding that if Plaintiff were required to work in a more populated setting than his current dishwashing position, he would be at risk of decompensating in the work environment.

The limitations attested to by Dr. Roman must be considered in formulating the RFC. *Rounds v. Comm'r Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that an ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC" (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008))). The ALJ's RFC finding need

---

[1] That Dr. Roman's findings are medical opinions within 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2), as well as her role as an examining physician, are not contested. Because the Court concludes that Dr. Roman's findings, the ALJ's opinion, and other medical evidence in the record are consistent, and because Plaintiff does not assert that there are contradictions between two sources of medical evidence in the record, the standards for giving only partial weight to an examining physician are not discussed.

only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

The RFC states that Plaintiff is limited "to only occasional interaction with supervisors, coworkers and the general public." The Court finds that this RFC limitation adequately covered Dr. Roman's concern regarding Plaintiff's risk of decompensation and ensured that Plaintiff would not be placed in a position that would put him at risk of decompensating, such as one more populated than his current work environment. In the hypothetical, the ALJ gave limitations of "occasional interaction with supervisors and coworkers, and only somewhat more limited, 10% of the time, interaction with the public, maximum." Because the RFC and hypothetical are consistent with Dr. Roman's findings, the ALJ gave Dr. Roman's findings adequate consideration.

### 2. Whether Plaintiff's Impairments Meet a Listing

Plaintiff also argues that the ALJ erred by not giving proper weight to Dr. Roman's findings in assessing whether Plaintiff's impairments met or equaled listings 12.04 or 12.06.[2] To establish a disability under the listings that were in effect at the time of the Commissioner's final decision,[3] Plaintiff needed to show that he met both the Part A and Part B requirements of either

---

[2] Medical evidence is only one factor in reaching a conclusion as to whether a claimant meets or equals a listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D) (2015). Therefore, because Dr. Roman's findings are not dispositive of the issue, whether the ALJ erred in determining that Plaintiff meets or equals a listing when all evidence is considered as a whole is further addressed in Part E.

[3] Plaintiff's opening brief alleged disability under listings 12.04, 12.06, and 12.15. The Commissioner responded by arguing that the listings Plaintiff relied on were not in effect at the time of the ALJ's decision, and therefore were not the proper listings. Because Plaintiff agreed 12.15 was not in effect and cannot be relied upon, it appears that Plaintiff concedes that the regulations in effect at the time of the ALJ's decision should apply. Because the ALJ's decision became the Commissioner's final decision, this comports with the Commissioner's instructions. *See*, *e.g.*, 66 Fed. Reg. 58010-01, 58011 (Nov. 19, 2001) ("With respect to claims in

listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04 & 12.06 (2015). Both listing have the same Part B requirement that the medically documented findings of Part A result in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

*Id*. at 12.04B & 12.06B.

Dr. Roman opined that Plaintiff was limited in both his ability to interact appropriately with the public as well as respond appropriately to usual work situations and to changes in a routine work setting. AR 448. Plaintiff contends these findings are sufficient to satisfy Part B requirements as a matter of law. Plaintiff's argument, therefore, is that the only way the ALJ could have found that Plaintiff does not meet or equal Paragraph B is by excluding some of this evidence. The Court disagrees and finds that the ALJ's conclusions in assessing Part B criteria were consistent with Dr. Roman's findings.[4] Dr. Roman did not find that Plaintiff experienced repeated episodes of decompensation, each of extended duration. Plaintiff, therefore, needed to show a "marked limitation" of at least two of the listed mental functioning areas.

The ALJ found that Plaintiff is markedly impaired in his ability to maintain social functioning. AR 14. This is supported by substantial evidence from Dr. Roman, who concluded

---

which we have made a final decision, and that are pending judicial review in federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.").

[4] Because Plaintiff cannot establish that he meets the Part B requirements, the Court does not address Part A of either listing.

that Plaintiff has no friends, is markedly limited in his ability to interact with the public, and is moderately limited in his ability interact with co-workers and supervisors. AR 444, 448.

Plaintiff argues that Dr. Roman's findings also support that Plaintiff is markedly limited with regard to activities of daily living. The Court disagrees. Dr. Roman described how Plaintiff's fiancé takes care of some chores and that Plaintiff sleeps in only two-hour increments. But Dr. Roman also opined that Plaintiff knows how to do all household chores, can drive, works five days a week, and is independent in dressing, grooming, and using the telephone. Thus, the ALJ's conclusion that Plaintiff did not have a marked impairment in his activities of daily living was a rational interpretation of the record, including Dr. Roman's opinions.

Dr. Roman's opinion that Plaintiff is markedly limited in his ability to respond appropriately to usual work situations and changes in routine work setting is also insufficient to show that the ALJ erred in determining that Plaintiff is only moderately impaired in concentration, persistence, or pace. Concentration, persistence, and pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(C)(3) (2015). Dr. Roman stated that Plaintiff could understand, remember, and carry out simple instructions without limitation and that Plaintiff could make judgments on simple work-related decisions without limitation. AR 447. These, combined with Dr. Roman's opinions regarding Plaintiff's moderate limitations in understanding, remembering, and following complex instructions and engaging in complex decision-making, (AR 447), present substantial evidence in support of the ALJ's determination that Plaintiff is only moderately, instead of markedly, limited in concentration, persistence, or pace. Because substantial evidence

supports the ALJ's conclusions, which are consistent with Dr. Roman's opinions, the ALJ adequately considered Dr. Roman's evidence and did not err.

## E. Step Three Analysis

Although Dr. Roman's findings do not alone indicate that Plaintiff was disabled within the meaning of 12.04 and 12.06, Plaintiff also argues that, when combined with his subjective symptom testimony and the testimony of his lay witness, the cumulative evidence establishes that he meets or equals a Part B listing. Plaintiff therefore contends that the ALJ erred in determining at step three that Plaintiff was not disabled. There is no evidence in the record that Plaintiff experienced repeated episodes of decompensation, each of extended duration. Therefore, in addition to his marked limitation in social functioning, Plaintiff must still show that he was markedly limited in his activities of daily living or in concentration, persistence, or pace.

The ALJ found that Plaintiff was not markedly impaired in activities of daily life, and, to the contrary, found that Plaintiff's daily activities undermined his claims as to the severity of his symptoms that would support a finding that he was markedly limited in any of the Part B listings. Further, the ALJ did not need to rely on the discredited portions of Plaintiff's symptom testimony in determining whether he met or equaled a listing. Mr. Grover's letter also does not undermine the ALJ's conclusion because it was not dispositive of any fact material to whether Plaintiff met or equaled a listing. Because the ALJ already discredited the only evidence in the record that could be read as adding to the severity of Dr. Roman's opined limitations—Plaintiff's subjective symptom testimony, the ALJ did not err in concluding that Plaintiff was not disabled under 12.04 or 12.06.

## F. The RFC and Hypothetical Posed to the VE

Plaintiff challenges the RFC and hypothetical posed to the VE, arguing that both are insufficient because they exclude alleged physical and mental limitations. Regarding the physical

PAGE 18 – OPINION AND ORDER

limitations, both the hypothetical and RFC take account of the physical limitations the ALJ found supported in the record. As discussed above, the ALJ provided sufficiently clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony for some complained of limitations, such as his limitations for walking, carrying, pushing, and pulling. The RFC and hypothetical accurately reflect the physical limitations the ALJ found credible.

The ALJ also accurately incorporated Plaintiff's mental limitations into the RFC and hypothetical. Plaintiff argues that the RFC and hypothetical should have included his need of up to 20 breaks per work shift. He contends that his testimony and the letter from his employer, Luke Grover, support the need for these breaks. As discussed above, however, the ALJ found that Plaintiff's activities of daily living do not support his symptom testimony. The ALJ, thus, did not need to rely on Plaintiff's assertion that he needed 20 breaks in formulating the RFC or hypothetical. Additionally, although the ALJ found that the Kozy Kitchen was an accommodated job, the letter from Mr. Grover did not discuss Plaintiff's claimed need for 20 breaks or that frequent breaks were authorized, needed, or taken. The letter is not evidence of the need for frequent breaks. Because there is no other evidence in the record that Plaintiff needed many, albeit short, breaks, the ALJ did not err by excluding it as a limitation from the RFC or hypothetical.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 16th day of April, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
